

**FILED**
9/4/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 575 |
| v. | |
| OMAR MAANI | Judge John Robert Blakey |

## AGREEMENT TO DEFER PROSECUTION

The UNITED STATES OF AMERICA, by its attorney JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, and the defendant, OMAR MAANI, and his attorney, MEGAN CUNNIFF CHURCH, hereby agree to the following:

Defendant has been charged by information with conspiracy to use an interstate facility to promote unlawful activity. Defendant understands that he has a right to have his guilt or innocence of the charges determined by a jury of his peers under the terms of the Speedy Trial Act, Title 18, United States Code, Section 3161, *et seq.* By signing this agreement, defendant agrees that, pursuant to Title 18, United States Code, Section 3161(h)(2), the period during which this prosecution is delayed pursuant to this Agreement is to be excluded in computing the time within which the trial in this case must commence under the Speedy Trial Act. Defendant knowingly waives his right to assert that his trial did not occur within the time limits prescribed by the Speedy Trial Act.

The United States Attorney will move the District Court, pursuant to Title 18, United States Code, Section 3161(h)(2), to defer the prosecution of defendant on the information for 24 months for the purpose of allowing defendant to demonstrate his good conduct during this period. For the purpose of demonstrating his good conduct, defendant agrees to abide by the conditions and requirements of this Agreement set out below.

### Conditions of Pretrial Diversion

Defendant shall not violate any federal, state, or local law (excluding minor traffic and parking infractions). Defendant shall immediately contact the assigned pretrial services supervisor if arrested and/or questioned by any law enforcement officer for any reason.

Defendant shall refrain from unlawfully using or possessing narcotic drugs or other controlled substances defined in Title 21, United States Code, Section 802, unless prescribed by a licensed medical practitioner.

Defendant shall report as directed to the assigned pretrial services supervisor, comply with his or her instructions, and keep the supervisor informed of defendant's whereabouts.

Defendant shall pay all or part of the cost of the program based upon defendant's ability to pay as determined by the Pretrial Services Office.

Defendant agrees that he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding.

Defendant shall file accurate income tax returns and pay all taxes, interest, and penalties as required by law.

### Admissions by Omar Maani

By signing this Agreement, defendant admits the following facts and agrees that these admissions may be used against him in any proceeding for any purpose, including as admissions, in the event that the government subsequently determines that he has breached this Agreement and the United States resumes or institutes prosecution of the charge against defendant in the information, or any other charge:

From no later than in or around May 2017 and continuing until in or around August 2017, at Oak Lawn, in the Northern District of Illinois, Eastern Division, and elsewhere, OMAR MAANI, defendant herein, knowingly conspired and agreed with Patrick Doherty and Individual B to commit an offense against the United States, that is, to use and cause to be used a facility in interstate commerce with the intent to promote, manage, and carry on, and to facilitate the promotion, management, and carrying on of an unlawful activity, namely, bribery in violation of 720 ILCS 5/33-1(a) and (b), and thereafter to perform and attempt to perform an act of promotion, management, and carrying on, and facilitation of the promotion, management, and carrying on of the unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3), in violation of Title 18, United States Code, Section 371.

Specifically, defendant had a financial interest in Company A, a Chicago-area company that provided red-light cameras that enabled municipalities, including Oak

Lawn, to enforce certain traffic violations and issue traffic-violation tickets. Company A periodically sent Oak Lawn officials video segments of proposed traffic violations captured by Company A's red-light cameras, and Oak Lawn officials subsequently decided which violations to approve. Tickets for approved violations were subsequently sent to individuals responsible for the violations through the United States mail. Defendant acknowledges that these mailings would be in furtherance of the conspiracy. Company A (1) obtained a portion of the proceeds generated from the approved-and-paid-for violations, and (2) paid a portion of those proceeds to sales agents responsible for obtaining contractual agreements with municipalities. Doherty, Individual B, and their respective consulting companies were sales agents for Company A.

Defendant agreed with Doherty and Individual B to provide a job for Trustee 1's son, in an effort to have Trustee 1 use his position as an Oak Lawn Trustee to award Company A more red-light cameras in Oak Lawn and have Oak Lawn use more-lenient standards in approving proposed traffic violations submitted by Company A.

On or about May 23, 2017, at approximately 10:50 a.m., Doherty had a phone call with defendant. During the call Doherty said, "Put this thought in the back of your head for Oak Lawn.... [Trustee 1 is] out of a job.... He's one of the [Oak Lawn] Trustees.... He's looking for a job for his kid." Defendant asked, "Does his kid wanna be a reviewer [for Company A], or is he conflicted then?" Doherty said, "I don't know.... I think he's looking to make as much money as he can because he's going to college, and his dad's gonna have no money to give him because he's outta work.... Think about something like this. If we come up with this figure, maybe it's 800 bucks a week just say for, hypothetically, for eight weeks.... I pay him out of my LLC. Something like that. I don't know. Something for him to do.... You know, for the five or six grand, chance we might get both Oak Lawns." Defendant said, "Yeah, let me...." Doherty A interjected, "Put your thinking ... cap on and everything.... Because I know that's [Trustee 2]'s best buddy, so that would, you know, you can go back to [Trustee 2] and talk to him with all that shit, too." Defendant understood Doherty to mean that if Doherty devised a means to pay Trustee 1's son for a period of approximately eight weeks, there was a good chance Trustee 1 would support Company A getting more red-light cameras in Oak Lawn and having Oak Lawn use more-lenient standards for purposes of approving proposed traffic violations submitted by Company A.

On or about May 25, 2017, at approximately 7:14 p.m., Doherty had a phone call with defendant. During the call Doherty asked, "Any other thought about that kid from Oak Lawn [Trustee 1's son] or not?" Defendant responded, "[H]onestly, let me think about it.... I'll come up with something. I'll think of something." Doherty

said, "Look, I'll put in a couple grand if I have to.... If it guarantees us getting the other locations [to install red-light cameras] in Oak Lawn, and the new Police Chief, I'm sure I'll get my money back." Defendant understood Doherty to mean that Doherty was willing to contribute money for payments to be made to Trustee 1's son in order to get Trustee 1 to support giving Company A more cameras in Oak Lawn.

On or about May 30, 2017, at approximately 12:27 p.m., Doherty had a phone call with defendant. During the call Doherty asked, "Did you have any thought on that, on the issue with Oak Lawn?... I'm gonna pay the kid [Trustee 1's son] just on the chance of, uh, that we can get the other ones in Oak Lawn and get him on our side.... He was the Police Chief's friend. He was sort of against us before." Defendant understood Doherty to mean that Doherty was going to pay Trustee 1's son in an effort to get Trustee 1 to support Company A getting more red-light cameras in Oak Lawn.

In addition, defendant paid for a ticket for Trustee 1 to come to an event at a cigar lounge on or about June 8, 2017 because defendant wanted to gain favor from Trustee 1 with issues Company A was having in Oak Lawn. Trustee 1 had been invited to the event via an email that crossed state lines. Defendant provided other benefits, including campaign contributions, meals, money, and sporting-event tickets, to other public officials, with the intention of obtaining those officials' official action in favor of Company A and another company in which defendant had a financial interest.

## Further Agreements Between the Parties

The United States Attorney may at any time initiate prosecution for the crime described in the information or any other offenses should defendant violate any condition of this agreement, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement of such prosecution, or if the United States Attorney concludes that defendant has provided false or misleading testimony or information to the United States Attorney's Office, to any law enforcement agency, or during any civil, criminal, or administrative proceeding. Defendant waives and shall not assert any statute-of-limitations defense to any prosecution that is not time-barred as of the date of this agreement. Alternatively, in the sole discretion of the United States Attorney, the United States Attorney may ask the District Court to extend the deferred prosecution period in the event the United States Attorney determines that defendant violated this agreement. The United States Attorney may also move the District Court to shorten the term of the deferred prosecution period at any time.

If defendant successfully completes this diversion program and fulfills all the terms and conditions of the Agreement, the government will move the Court to dismiss the information against defendant.

Defendant understands that this Agreement is a public document and may be disclosed to any party.

Defendant understands that pursuant to Title 18, United States Code, Section 3161(h)(2), this Agreement is subject to approval by the Court. Should the Court refuse to approve, and thereby reject, this Agreement, neither party shall be bound to any term of this Agreement, and no admissions in this Agreement may be used against defendant.

### Waiver of Claims Arising From Delay

Defendant understands that the Sixth Amendment to the Constitution of the United States provides that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial and that Rule 48(b) of the Federal Rules of Criminal Procedure provides that the Court may dismiss an indictment, information, or complaint for unnecessary delay in presenting a charge to the Grand Jury, filing an information, or bringing a defendant to trial. Defendant hereby requests that the United States Attorney defer any prosecution of him for violations of federal criminal law, and to induce the United States Attorney to defer such prosecution pursuant to the terms of this agreement, defendant agrees and consents that any delay from the date of this agreement to the date of initiation of any prosecution shall be deemed to be a necessary delay at his request, and that he waives any defense to such prosecution on the ground that such delay operated to deny him rights to a speedy trial or to bar the prosecution by reason of the running of the statute of limitations.

The parties agree that defendant's obligations contained in this agreement shall continue for the duration of the deferred prosecution period and the duration of his cooperation with the United States Attorney's Office. Defendant's cooperation with the United States Attorney's Office shall conclude when the United States Attorney notifies defendant in writing that all investigations and prosecutions arising from or requiring defendant's cooperation are final and that his cooperation is complete.

Defendant acknowledges that he has read this Agreement and has carefully reviewed each provision with his attorney. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

_____  Date: 9-3-20
OMAR MAANI

_____  Date: 9/4/20
MEGAN CUNNIFF CHURCH
Attorney for Omar Maani

_____  Date: 9-3-2020
TIFFANY A. ARDAM
Assistant U.S. Attorney

_____  Date: 9-3-2020
JAMES P. DURKIN
Assistant U.S. Attorney

_____  Date: 9-3-20
CHRISTOPHER J. STETLER
Assistant U.S. Attorney

6